UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RYAN MATHIAS, individually,
and on behalf of other
members of the general
public similarly situated,
as an aggrieved employee
pursuant to the Private
Attorney General Act ("PAGA"),

        Plaintiff,

        v.

RENT-A-CENTER, INC., a
Delaware Corporation; and
DOES 1 through 10, inclusive,

        Defendants.

CIV. NO. S-10-1476 LKK/KJM

O R D E R

Plaintiff brings individual and class claims concerning his employment with defendant. Defendant has moved to compel arbitration pursuant to an employment agreement. At issue is whether the class action waiver in the agreement is valid. For the reasons described below, defendant's motion is denied.

**I. BACKGROUND**

**A.  Procedural History**

Ryan Mathias ("Mathias" or "plaintiff"), a California citizen, was employed by Rent-A-Center, Inc. ("RAC" or "defendant") as an

1  Assistant Manager from February 2, 2008 through October 5, 2009.
2  Plaintiff's position was classified as a non-exempt or hourly
3  position. RAC is a Delaware corporation whose principal place of
4  business is in Texas. As a condition of employment, plaintiff
5  executed an arbitration agreement ("Agreement") for present and
6  future employment claims, among other disputes. The Agreement
7  contained a class action waiver and excluded arbitration private
8  attorney general actions. Such actions may only be litigated in
9  court.
10     On April 28, 2010, plaintiff filed a class action in state
11 court alleging eight claims arising from his employment with
12 defendant, including claims for unpaid wages and overtime, unpaid
13 rest and meal period premiums, and penalties arising from non-
14 compliant wage statements under the California Labor Code and
15 California Business and Professions Code. Plaintiff also seeks to
16 recover penalties as "an aggrieved employee" pursuant to the
17 Private Attorneys General Act ("PAGA"). On June 15, 2010,
18 plaintiff filed a First Amended Complaint ("FAC") with similar
19 claims. On June 15, 2010, defendant removed the case to federal
20 court. On June 24, 2010, defendant filed a motion to compel
21 arbitration and stay the civil proceedings.
22     Defendant asserts that the Agreement obliges plaintiff to
23 individually arbitrate his claim, precluding individual or
24 collective action in civil court. Defendant also moves for a stay
25 of plaintiff's claims that are not covered by the Agreement,
26 including his PAGA claims, pending arbitration.

**B.    Arbitration Agreement**

Plaintiff was provided a five page document for his signature as a condition of employment. In bold-faced, uppercase type, the title is "Mutual Agreement to Arbitrate Claims." Decl. of Steven Spratt in support of Def.'s Motion to Compel and Stay ("Spratt Decl.") Ex. 1.[1] The document has 31 paragraphs and a signature page. At the top of the signature is the following statement in bold-face type "ALL EMPLOYEES WHO RECEIVE THIS AGREEMENT AND CONTINUE EMPLOYMENT THEREAFTER ARE BOUND BY THE TERMS OF THIS AGREEMENT." (Uppercase in original). The document, dated August 24, 2009, was signed by plaintiff. It was not signed by a representative of defendant, nor was there a signature line for any other persons.[2]

Three sections are pertinent to the defendant's claims:

<u>Claims Covered By The Agreement</u>

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I have. . . .
>
> The only claims that are subject to arbitration are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement, include, but are not limited [to]: . . . claims incidental to the

---

[1] The Agreement is contained in Exhibit 1, and all references in this section are to that document.

[2] For purposes of this motion, the court assumes that the contract for arbitration is unaffected by the lack of a signature on behalf of the defendant.

3

>employment relationship . . . and claims for wages or other compensation due . . . and claims for violation of any federal, state or other government law, statute or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."
>. . .
>
>Class Action Waiver
>There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action. Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute. Regardless of anything else in this Agreement . . . the enforceability and validity of the Class Action Waiver may be determined only by a court and not by an arbitrator . . . . [T]his clause . . . shall not be severable from this Agreement in any case in which the dispute to be arbitrated is brought as a class or collective action."
>. . .
>
>Claims Not Covered By The Agreement
>Claims I may have for worker's compensation benefits, state disability insurance benefits and unemployment compensation benefits are not covered by this Agreement. Also not covered are private attorney general actions, which may be maintained in a court of competent jurisdiction.

**II. STANDARD FOR A MOTION TO COMPEL ARBITRATION AND STAY**

A party to an arbitration agreement may move to compel arbitration when the other party "unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate." Paine Webber, Inc. v. Faragalli, 61 F.3d 1063, 1066 (3rd Cir. 1995); 9 U.S.C. § 4. The motion to compel must be supported by an independent basis for federal subject-matter jurisdiction under Title 28 to be brought in federal court, such as diversity of citizenship. Southland Corp. v. Keating, 465 U.S. 1, 15 (1984). Once these requirements are met, and if the court is

4

satisfied that the agreement covers the dispute in question and a valid agreement to arbitrate exists, the court must issue an order directing the matter to arbitration. 9 U.S.C. § 4; see also Chiron Corp v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (The court's role is limited to determining whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue.).

Section 3 of the Federal Arbitration Act ("FAA") provides that if a court determines that an agreement is subject to arbitration, it will stay litigation:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . .

9 U.S.C. § 3.

### III. ANALYSIS

Defendant moves to compel arbitration of many of plaintiff's claims and to stay his remaining claims. They argue that the right to compel arbitration under the circumstances of this case was established by the Supreme Court's recent decision in Stolt-Nielsen v. Animalfeeds Int'l Corp., ___ U.S. ___, 130 S.Ct. 1758 (2010)]. Plaintiff opposes arbitration on the grounds that the Agreement violates California law because the class action waiver and the exclusion of arbitration of PAGA claims renders the Agreement unenforceable under Gentry v. Super. Ct.,

5

42 Cal. 4th 443 (2007).

### A. Federal Arbitration Act

The FAA governs arbitration agreements "involving commerce." 9 U.S.C. § 2. The purpose of the FAA is to "place such agreements upon the same footing as other contracts," and thus represents Congress's intent to favor the enforceability of arbitration agreements." Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 474-75 (1989) (internal citations omitted). Under the "savings clause" of the FAA, a written agreement to submit an existing or future dispute to arbitration is valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts ordinarily apply state contract law in determining the enforceabililty of an arbitration agreement subject to the FAA. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, (1995); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

Section 2 precludes state laws "whether of legislative or judicial origin" that invalidate arbitration provisions on any basis that is "applicable only to arbitration provisions." Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 685, 687, (1996) (quoting Perry v. Thomas, 482 U.S. 483, 492 n.9, (1987)). But "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."

6

Doctor's Assocs., 517 U.S. at 687. The FAA does not specifically address class action or class action waivers.

The parties do not dispute that the FAA applies. First, the Agreement states it shall be governed by the FAA. Second, defendant operates stores throughout the states, and rents and sells goods transported across state lines. Spratt Decl. at 1. Thus, the Agreement at issue concerns interstate commerce and the FAA applies.[3] Id. Ex. 1.

### B.  California Law Regarding Class Action Waivers

#### 1.  Unwaivable Statutory Rights

In 2008, the California Supreme Court held that, under certain circumstances, class action waivers are unenforceable. Gentry v. Sup. Ct., 42 Cal.4th 443 (2008); see also Discover Bank v. Sup. Ct., 36 Cal.4th 326 (2003). Specifically, "[A]lthough '[c]lass action and arbitration wiavers are not, in the abstract, exculpatory clauses,' . . . such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." Gentry, 42 Cal.4th at 457 (quoting Discover Bank, 36 Cal.4th at 161).

The court was persuaded that "class action waivers in wage and hour cases and overtime cases would have, at least frequently if not invariably, a similar exculpatory effect,

---

[3] Even if this were not the case, the Supreme Court has held that the FAA applies to all employment contracts except those expressly exempted under the statute. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 (2001).

7

1  and would therefore undermine the enforcement of the statutory
2  right to overtime pay." Gentry, 42 Cal.4th at 457. While the
3  court recognized that it cannot categorically hold all class
4  waivers in overtime cases as unenforceable per se, it held
5  that "when it is alleged that an employer has systematically
6  denied proper overtime pay to a class of employees and a class
7  action is requested notwithstanding an arbitration agreement
8  that contains a class arbitration waiver," trial courts must
9  determine whether the class action waiver is exculpatory. Id.
10 at 462-63. Courts shall consider the following factors: (1)
11 "the modest size of the potential individual recovery;" (2)
12 "the potential for retaliation against members of the class;"
13 (3) "the fact that absent members of the class may be ill
14 informed about their rights;" and (4) "other real world
15 obstacles to the vindication of class members' right to
16 overtime pay through individual arbitration." Id. at 463. Upon
17 evaluation of these factors, the court must determine whether
18 proceeding with a class "is likely to be a significantly more
19 effective practical means of vindicating the rights of the
20 affected employees than individual litigation or arbitration,
21 and . . . [whether] disallowance of the class action will
22 likely lead to a less comprehensive enforcement of overtime
23 laws for the employees alleged to be affected by the
24 employer's violations." Id. If the court determines that class
25 proceedings are significantly more effective and practical and
26 that disallowance of such proceedings will likely lead to less

8

comprehensive enforcement, "it must invalidate the class arbitration waiver to ensure that these employees can vindicate their unwaivable[, statutory] rights . . . ." Id. (internal quotation omitted).

### 2.  Unconscionability

The Gentry court also recognized that a class action waiver, or any other clause of an arbitration agreement, may be unenforceable when it is found to be unconscionable. Id. at 467. Under California law, a contract, or a clause of a contract, must be both procedurally and substantively unconscionable to be unenforceable. Discover Bank, 36 Cal.4th at 160. The procedural element focuses on "oppression or surprise due to unequal bargaining power." Id. (internal quotations omitted). This element "generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id. The substantive element focuses upon whether results are "overly harsh" or "one-sided." Id. Such terms "may take various forms, but may generally be described as unfairly one-sided." Id. (internal quotation omitted). While both elements must be present for a contract to be unconscionable, they need not be "present in the same degree." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 114 (2000). Rather, "a sliding scale is invoked which disregards the regularity of the procedural

9

process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." Id. (quoting 15 Williston on Contracts § 1763A (3d ed. 1972)).

**C.  The Holding of Stolt-Nielsen**

Defendant argues that the Supreme Court's recent decision in Stolt-Nielson preempts Gentry. It contends that the Court held that "class wide arbitration is forbidden unless the arbitration agreement permits such actions to proceed." Mtn. to Compel at 8 (emphasis in original). RAC interprets the decision to hold that courts may not rely "on perceived 'public policy' to thwart enforcement of the parties' agreement." Id. Accordingly, defendant holds the position that the California Supreme Court's decision in Gentry is preempted because the court reasoned that class action waivers may be unenforceable for reasons of public policy. The court cannot agree.

In Stolt-Nielson, the Court considered, inter alia, whether an arbitration panel has the authority to impose class arbitration where an arbitration agreement is silent on the issue because it viewed class arbitration as "the best rule to be applied in such a situation." Stolt-Nielson S.A., 130 S.Ct. at 1769. The Court noted that the arbitration panel failed to inquire whether the FAA, maritime law, or state law provided any instruction as to interpretation of the agreement Id. at 1768-69. Rather, the panel merely "impose[d] its own policy

10

1  preference." Id. at 1770. The Supreme Court held that the
2  arbitration panel exceeded its powers by imposing its own
3  policy choice "instead of identifying and applying a rule of
4  decision derived from the FAA or either maritime or [state]
5  law." Id.
6      Nowhere in the opinion did the Court even infer that
7  state law regarding contract interpretation is preempted where
8  the rule of interpretation is based upon policy concerns. In
9  fact, the court specifically held the arbitration panel should
10 rely on state contract law in determining whether to impose
11 class arbitration. In the few months since Stolt-Nielsen was
12 decided two appellate courts have adopted this reasoning. See
13 Fensterstock v. Educ. Fin. Partners, ___ F.3d ___ (2d Cir.
14 July 12, 2010) available at 2010 WL 2729759; Litman v. Cellco
15 P'ship, No. 08-4103, 2010 WL 2017665 (3d Cir. May 21, 2010),
16 at *3 n.5 (noting that "the en banc Court . . . expressly
17 cited Stolt-Nielson without then questioning whether it
18 precluded an unconscionability determination") (citing Puleo
19 v. Chase Bank USA, N.A., 605 F.3d 172 (3d Cir. 2010) (en
20 banc)). This court has not found any decisions of the courts
21 of appeals that interpret Stolt-Nielsen as holding that the
22 FAA preempts state rules of contract interpretation derived
23 from public policy concerns. For this reason, the court
24 applies California law to evaluate the class action waiver at
25 issue in this case.
26 ////

**D.      Application to the Instant Case**

The Agreement sets forth that only the courts may determine whether the class action waiver is enforceable. As such, this question is properly brought before this court under the FAA.

Plaintiff argues that the waiver is unenforceable under Gentry. Relying upon a declaration filed in support of defendant's notice of removal, plaintiffs contend that plaintiff's salary at termination was no more than $12.94 per hour and, consequently, individual recovery is likely to be modest. Further, they contend that members of the putative class may be subject to retaliation and that they may be unaware of their rights, especially those who are no longer working for defendant. Plaintiff does not identify any "other real world obstacles." Defendant does not raise any arguments as to the application of Gentry aside from the preemption question discussed above. Thus, the court finds that plaintiff has demonstrated that the waiver undermines the enforcement of the statutory right to overtime pay.

The class action waiver clearly states that the clause is not severable from the Agreement. Consequently, the entire agreement is unenforceable because the class action clause is unenforceable. Thus, defendant's motion to compel arbitration is denied.

////

////

**IV. CONCLUSION**

For the foregoing reasons, the court ORDERS that defendant's motion to compel arbitration, ECF No. 5, is DENIED.

IT IS SO ORDERED.

DATED: September 15, 2010.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT